UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** } | |
| } | |
| **Plaintiff** } | |
| } | |
| v. } | Case No.: 2:22-cr-00387-MHH |
| } | JHE-1 |
| **NATHANIEL KASHEEN** } | |
| **REMBERT,** } | |
| } | |
| **Defendant.** | |

# MEMORANDUM OPINION AND ORDER

Mr. Rembert has asked the Court to suppress evidence law enforcement officers obtained during a traffic stop. (Doc. 25). After conducting an evidentiary hearing concerning Mr. Rembert's motion, (Docs. 55), and considering the parties' briefs, (Docs. 25, 29, 36, 39, 42, 56), Chief Magistrate Judge England entered a report in which he recommended that the Court deny Mr. Rembert's motion to suppress, (Doc. 60).[1] Mr. Rembert objects to Magistrate Judge England's finding that a law enforcement officer conducted a valid inventory search of the stopped

---

[1] This Clerk of Court originally assigned this case to the Hon. Karon O. Bowdre. Judge Bowdre held a hearing on Mr. Rembert's motion, (Doc. 38), but she did not resolve the motion before she retired. Following Judge Bowdre's retirement, the Clerk of Court reassigned this case to the undersigned judicial officer. Chief Magistrate Judge England conducted a second suppression hearing, (Doc. 55), and issued the report that is the subject of this opinion.

vehicle, leading inevitably to the discovery of the firearm at issue in this case. (Doc. 61).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court's obligation to "'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" 447 U.S. at 673 (quoting 28 U.S.C. § 636(b)(1)), requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party,'" 447 U.S. at 675 (quoting House Report No. 94-1609, p. 3 (1976)). *United States v. Raddatz*, 447 U.S. 667 (1980) (emphasis in *Raddatz*).

Mr. Rembert does not object to Magistrate Judge England's description of the events that led to the inventory search at issue. The facts are these:

> On July 2, 2021, Birmingham Police Department ("BPD") Officer Anthony Preston was patrolling the city's north precinct. He observed a gray Chevrolet four-door sedan parked in front of what he knew to be a drug house. The sedan left the location and made two left turns, not signaling either time. Officer Preston turned on his patrol vehicle's

2

lights and he and his partner, Officer Melton, initiated a traffic stop. Officer Preston's body camera captured video footage of the stop.

The sedan came to a stop in the center lane of 18th Street North, a five-lane street with two northbound and two southbound lanes. (*See* Cam at 00:27). Officer Preston approached the sedan's driver's side and informed Rembert (who was driving the vehicle) and his female passenger that he had pulled them over because Rembert twice failed to signal a turn. (Cam at 00:26–00:38). Rembert protested that he had "just put it on," but Officer Preston informed him that it did not go on and might be out. (Cam at 00:38–00:45).

Officer Preston requested Rembert's driver's license and insurance. (Cam at 00:45). Rembert replied that he had insurance, but that his license was at his house. (Cam at 00:45–00:53). Officer Preston asked Rembert for his Social Security number and name; Rembert provided both. (Cam at 00:53–01:11).

Officer Preston asked if Rembert had his insurance in the car. (Cam at 01:12). Rembert gestured at his phone and, after a few seconds, made a phone call. (Cam at 01:13–01:55). Rembert informed Officer Preston that "it's on the phone," and Officer Preston replied, "Okay, that's fine, I'll look it up." (Cam at 01:56–01:58). Rembert requested that the other party to the phone call "just send [him] a picture." (Cam at 01:59–01:59). Officer Preston again assured Rembert, "You're good, I can look it up." (Cam at 01:59–02:01). Rembert remained on the phone for another several seconds before asking Officer Preston if he could look up the insurance information. (Cam at 02:01–02:08). Officer Preston again informed Rembert that Rembert was "good" and not to "worry about it" because Officer Preston would "look it up." (Cam at 02:08–02:10). Officer Preston testified that at this point, he had sufficient information to provide to dispatch to determine whether Rembert had outstanding warrants. (Doc. 55 at 45:6–46:1).

Rembert remained on the phone but not speaking to the other party. Officer Preston asked, "Can I talk to you for a second, my man?" (Cam at 02:26). Rembert put the phone down. Officer Preston continued, "Do you have any weapons or drugs inside the vehicle? Please be honest with me. If you have anything, just be honest. I'm a straight up person. But if I have to search the vehicle and I find something, then

3

we're going to have a problem." (Cam at 02:28–02:38). Surprised, Rembert asked, "If you've got to search the vehicle? Like, for what? What I did?" (Cam at 02:39–02:41). Officer Preston responded, "No, I'm asking you. Do you have anything illegal inside the vehicle? Be honest with me. If you're honest with me, I'll work with you. Okay." (Cam at 02:41–02:49).

Rembert admitted that he had a pistol in the vehicle and, in response to Officer Preston's follow-up question, that he did not have a license for it. (Cam at 02:51–02:56). Officer Preston retrieved the pistol, which was located between the driver's seat and the center console. (Cam at 02:59–03:26). After securing the pistol, Officer Preston asked if there was anything else illegal in the car; Rembert denied that there was. (Cam at 03:27–03:30). Officer Preston handed the pistol to Officer Melton. Rembert asked Officer Preston why Officer Preston was searching the vehicle, and Officer Preston responded, "I didn't say I was searching. I said if I *did* have to search the vehicle. I just wanted you to be honest, that's it. Just cause—you know, guns, it's a safety thing. So, you know, I appreciate your honesty." (Cam at 03:37–03:54).

After about thirty seconds, Officer Preston contacted dispatch with his unit number, 143. (Cam at 04:24). He ordered Rembert out of the vehicle and instructed him to "chill right here" at the back of the sedan and to "relax." (Cam at 04:25–04:45). At this point, a little over two minutes after Rembert ended his phone call, Officer Preston contacted dispatch to request a lookup. (Cam at 04:46–04:48). Dispatch responded approximately two seconds later, and Officer Preston relayed Rembert's Social Security number (and no other information). (Cam at 04:50–04:59). A few seconds later, dispatch responded with Rembert's name and date of birth. (Cam at 05:10–05:33). Dispatch also indicated that Rembert had multiple warrants for his arrest. (Cam at 05:40–05:55). Officer Preston asked dispatch to confirm the warrants. (Cam at 06:25).

While waiting for dispatch to respond, Officer Preston asked Rembert why he did not have a permit for the gun. (Cam at 06:38). Rembert replied that he just had it for protection. (Cam at 06:42). Officer Melton asked Rembert if he had been convicted of a felony. (Cam at

4

> 07:07). Rembert admitted that he had and described his convictions. (Cam at 07:11–07:36).
>
> Dispatch confirmed the case numbers associated with Rembert's active warrants. (Cam at 07:36). After some further conversation, Officer Preston informed Rembert that he was being detained due to three warrants with the City of Birmingham. (Cam at 08:42–08:54). Officer Preston handcuffed Rembert and placed him in the back of his patrol vehicle. (Cam at 08:55–10:30). As Officer Preston walked Rembert back to the patrol car, Officer Melton stated "confirmed" and walked back to the passenger side of the sedan. (Cam at 10:04–10:08).
>
> With Rembert secured, Officer Preston made his way back to the sedan. Outside the passenger side, Officer Melton had handcuffed Rembert's passenger. (Cam at 11:13). Officer Preston testified that Rembert's passenger also had active warrants and was arrested pursuant to those warrants. Consistent with Officer Preston's testimony, as Officer Preston approached the sedan's driver's side, Officer Melton can be heard explaining to the passenger that she had two warrants with the City of Birmingham. (Cam at 11:19–11:22).
>
> Officer Preston opened the sedan's driver's side door and prepared to perform an inventory search of the vehicle. (Cam at 11:25).

(Doc. 60, pp. 2-6).

Based on these facts, Magistrate Judge England found that Officer Preston violated Mr. Rembert's Fourth Amendment rights when he (Officer Preston) prolonged the traffic stop with questioning unrelated to the stop and without reasonable suspicion of criminal activity. (Doc. 61, p. 19). Mr. Rembert does not object to that finding. By its silence, neither does the United States. The Court adopts Magistrate Judge England's thoughtful, well-reasoned analysis of the Fourth Amendment violation that occurred under *Rodriguez v. United States* when Officer

Preston unconstitutionally prolonged the traffic stop. (Doc. 60, pp. 7-19) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

Magistrate Judge England reasoned that despite the Fourth Amendment violation, the Court should not suppress evidence of the firearm Officer Preston recovered during the traffic stop because the government carried its burden of establishing by a preponderance of the evidence that Officer Preston inevitably would have obtained the firearm through the following sequence of events: he would have arrested (and did, in fact, arrest) Mr. Rembert on outstanding warrants; impounded the vehicle Mr. Rembert was driving; and inventoried the vehicle incident to impoundment, leading to the discovery of the firearm. (Doc. 60, pp. 20-28). Mr. Rembert asserts one factual and two legal objections to Magistrate Judge England's analysis. Factually, Mr. Rembert objects to Magistrate Judge England's finding that Officer Preston followed Birmingham Police Department "standard criteria" when he decided to impound the vehicle that Mr. Rembert was driving. (Doc. 61, p. 3). Mr. Rembert objects to Magistrate Judge England's legal conclusions that a law enforcement officer has discretion to deviate from a written impoundment policy and that the firearm is admissible pursuant to the inevitable discovery doctrine. (Doc. 61, p. 3).

With respect to his factual objection, Mr. Rembert acknowledges that law enforcement officers "have the authority to impound and inventory vehicles." (Doc.

61, p. 4). The Eleventh Circuit identified the bounds of that authority in *United States v. Isaac*, 987 F.3d 980 (11th Cir. 2021). The Court of Appeals explained:

> An officer has the authority to impound a car if his decision to impound it is "in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity." *Sammons v. Taylor*, 967 F.2d 1533, 1543 (11th Cir. 1992) (quotation marks omitted); *accord United States v. Johnson*, 777 F.3d 1270, 1277 (11th Cir. 2015). Though the search cannot be based on only the suspicion of finding evidence, an officer's expectation that evidence will turn up does not invalidate an otherwise lawful inventory search. *See United States v. Bosby*, 675 F.2d 1174, 1179 (11th Cir. 1982). Once a car is lawfully impounded, officers may conduct a warrantless inventory search of it if they continue to follow "standardized criteria." *Sammons*, 967 F.2d at 1543.

*Isaac*, 987 F.3d at 988-89. Mr. Rembert contends that "[t]he Government did not meet its burden to show that Officer Preston's decision to impound the vehicle was based on standardized criteria" because the standards on which the Government relied appear in the Birmingham Police Department's "searches-incidental-to-arrest policy," and that policy does not state when an officer may impound a vehicle. (Doc. 61, p. 6) (citing Doc. 38, p. 37; Doc. 55, pp. 53-54).

Mr. Rembert is correct; though the written Birmingham Police Department policy on which the government relies contains a provision concerning the scope of and procedures for an inventory search, (Doc. 58-1, pp. 7-8), the policy does not indicate when an officer may impound a vehicle, (Doc. 58-1; Doc. 55, pp. 50, 53, 54). Mr. Rembert acknowledges that absent a written policy, the government may establish a police department's impoundment policy through testimony from a police

officer.  (Doc. 61, p. 4).  In *United States v. Johnson*, the Eleventh Circuit indicated that an officer's testimony coupled with reasonable inferences from the officer's testimony may be sufficient to establish that "there were 'standard criteria' for the decision to impound."  777 F.3d 1270, 1278 (11th Cir. 2015), *overruled on other grounds*, *United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021).

Here, Officer Preston acknowledged that in deciding whether to impound a vehicle, an officer must consider the circumstances surrounding a traffic stop and exercise his judgment.  (Doc. 55, pp. 53-54; *see also* Doc. 38, pp. 37, 38).  Officer Preston stated that BPD's policy authorized him to tow Mr. Rembert's car because the car was impeding the flow of traffic, and Mr. Rembert was under arrest.  Officer Preston stated that, for safety reasons, BPD officers should not call family members to the scene of an arrest, so no one was available to operate Mr. Rembert's vehicle.  (Doc. 55, p. 26).[2]  Officer Preston testified that when a vehicle is left in a lane of traffic, under BPD policy, an officer must have the vehicle towed.  (Doc. 55, p. 65).

Officer Preston's testimony fills the gaps in BPD's search policy, and his testimony is logically related to legitimate law enforcement concerns.  As the Supreme Court explained in *Delaware v. Prouse*, "[t]he essential purpose of the

---

[2] As Magistrate Judge England stated in his factual findings, Officer Melton arrested Mr. Rembert's passenger on outstanding warrants.  Mr. Rembert does not challenge Magistrate Judge England's finding that Mr. Rembert stopped his car stop in the center lane of a five-lane street and that a truck was parked in another lane, "leaving a bottleneck between Rembert's sedan and the truck."  (Doc. 60, p. 24).

proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .'" 440 U.S. 648, 653-54 (1979) (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978)).  It is eminently reasonable to remove a vehicle from a lane of traffic whether the vehicle is stalled or abandoned or is without a driver for reasons related to a traffic stop.  The BPD policy Officer Preston articulated is reasonable and allows an officer, in deciding whether to impound a vehicle, to exercise judgment based on the specific circumstances of a particular traffic stop. *See United States v. Betterton*, 417 F.3d 816, 830 (8th Cir. 2005) ("[A]n impoundment policy may allow some latitude and exercise of judgment by a police officer when those decisions are based on 'legitimate concerns related to the purposes of an impoundment.'") (quoting *United States v. Petty,* 367 F.3d 1009, 1012 (8th Cir. 2004)).

Because Officer Preston's testimony is sufficient to establish standard criteria that BPD officers must use to determine whether to impound a vehicle following the driver's arrest, and because a law enforcement officer, as a matter of law, may exercise judgment when determining whether to impound a vehicle stopped in a lane of traffic, the Court overrules Mr. Rembert's objections to Magistrate Judge England's finding that despite the unconstitutionally-prolonged traffic stop, the

firearm Officer Preston identified during Mr. Rembert's traffic stop inevitably would have been located pursuant to BPD's tow and inventory policies. Therefore, for the reasons discussed in Magistrate Judge England's report and in this opinion, the Court overrules Mr. Rembert's objections to the report and denies Mr. Rembert's motion to suppress.

      **DONE** and **ORDERED** this May 21, 2024.

                                          _____
                                          **MADELINE HUGHES HAIKALA**
                                          UNITED STATES DISTRICT JUDGE